## SEXAUER ET AL. v. STAR MILLING COMPANY.

[No. 21,563.     Filed January 14, 1910.]

1. APPEAL.— *Interlocutory Orders.— Eminent Domain.—Appointment of Appraisers.*—Under §933 Burns 1908, Acts 1905, p. 59, §5, providing that from the "interlocutory order overruling such objections [to the complaint] and appointing appraisers such defendants, or any of them, may appeal," an appeal taken from the order appointing appraisers is sufficient and may include and present for decision all prior adverse rulings to which exceptions have been taken. p. 345.

2. APPEAL.—*Transcript.—Index.*—An index covering the first four pages of the transcript complies with Supreme Court rule three requiring the index "to form the first page of the transcript." p. 345.

3. PLEADING.—*Complaint.— Statutory Form.— Eminent Domain.*— A complaint in eminent domain, which follows the statutory requirements (§930 Burns 1908, Acts 1905, p. 59, §2) is sufficient. p. 346.

4. EMINENT DOMAIN.—*Right of.—Water-Mills.*—Under §927 Burns 1908, §883 R. S. 1881, any person owning land upon one side of a watercourse upon which he desires to erect a mill to be propelled by water, may exercise the power of eminent domain for the purpose of condemning the necessary lands for such purpose. pp. 346, 347, 350.

5. EMINENT DOMAIN.—*Public Use.—Question for Courts.*—Whether a certain use is a public one is a question for the courts, but where the legislature designates such use as a public one, the rebuttable presumption is that it is a public one. p. 347.

6. EMINENT DOMAIN.—*Public Use.—What Is.*—For a use to be public it is not necessary that all of the public should actually participate therein, but only that the public may have a right so to do. p. 347.

7. CONSTITUTIONAL LAW.—*Reënactment of Constitutional Provision.—Construction.*—The reënactment of a constitutional provision which has received a judicial construction, impresses such construction upon the reënacted provision. p. 349.

8. EMINENT DOMAIN.—*Revocation of Right of.—Water-Mills.*—The legislature has the right to revoke the power of eminent domain granted to owners of water-mills. p. 351.

From Lagrange Circuit Court; *James S. Dodge*, Judge.

Action by the Star Milling Company against Solomon Sexauer and others. From a judgment for plaintiff, defendants appeal. *Affirmed.*

*Otis L. Ballou, William H. Duff, Francis D. Merritt* and *Miller, Drake & Hubbell,* for appellants.

*Thomas R. Marshall, Hanan & Ganiard* and *Hile & Baker,* for appellee.

MONTGOMERY, J.—This is an appeal from an interlocutory order appointing appraisers to assess the damages resulting to appellants' lands from the raising of a mill-dam. The complaint alleged substantially the following facts: That appellee is a corporation organized and doing business under and by virtue of the laws of Indiana, and is the owner of a twenty-two-acre tract of land in Lagrange county, particularly described, with the privilege of erecting a dam three feet high, and the right to use and overflow water on certain lands as a tail-race, all of which is known as the Star mill property, and is situate on the banks of a permanent watercourse known as Fawn river; that appellee was organized as a corporation for the purpose, among others named, of grinding and manufacturing all kinds of flour, meal and feed from grain, "upon and by what is commonly known as the toll system," and is the owner of a flour- and feed-mill situate upon the premises described and on the bank of said stream; that this mill is equipped with water turbines and appliances for operating the same by water-power to be derived from said watercourse, and is not equipped for operation by any other power; that the tail-race described has for a number of years been dug and dredged out so that with a dam so erected as to furnish a head of water at its turbines seven feet, six inches in depth the mill could be continuously operated, and without such a head of water the mill cannot be continuously operated; that in order to operate said mill it is necessary to construct a dam at the place where the present dam now is on appellee's premises and across said river to furnish a head of water at the present turbines of said mill seven feet, six inches in depth; that to secure such depth of water at the turbines it is necessary to construct a dam across Fawn river of the height particularly described, as in no other way can appellee

continuously operate said mill; that appellee is one of the corporations which, under the laws of this State, has the right to exercise the power of eminent domain, and has entered upon appellants' lands for the purpose of examining and surveying the property and rights sought to be appropriated, and has made an effort to purchase for the use described such lands, easements and other interests, but has not agreed and has been unable to agree with appellants as to the damages that would result to their lands and to them from the construction of said dam; that the use which appellee intends to make of the property and rights to be appropriated is to overflow said lands by means of the dam, so as to furnish a depth of seven feet, six inches of water at the existing turbines of said mill, which are now set in concrete; that appellee seeks to take real estate, owned by appellants, and situate in Lagrange county, Indiana; that appellee intends to use the lands sought to be taken for the purpose of overflowage; that appellee has been unable to agree with any of appellants for the purchase of such lands and the right to overflow the same.

The several appellants filed numerous objections to the complaint, which were overruled and exceptions thereto properly saved.

The principal controversy is presented by the assignment that the court erred in overruling appellants' fourth objection, which alleged that the complaint did not state facts sufficient to constitute a cause of action for the appropriation of the lands described. Appellees have on file a motion to dismiss this appeal, for the reasons (1) that no appeal was taken from the order overruling appellants' objections, but only from the order appointing appraisers, (2) that appellants have not complied with rule three of this court, relating to an index to the transcript.

The statute, after providing for the filing of objections by defendants in condemnation proceedings, prescribes that "if

such objections are overruled the court, or judge, shall 1. appoint appraisers as provided for in this act; and from such interlocutory order overruling such objections and appointing appraisers such defendants, or any of them, may appeal." §933 Burns 1908, Acts 1905, p. 59, §5. The statute commands the court, upon the overruling of objections to appoint appraisers, as provided for in the act provided it is "satisfied of the regularity of the proceedings, and the right of the plaintiff to exercise the power of eminent domain for the use sought." §932 Burns 1908, Acts 1905, p. 59, §4. No appeal is authorized from the mere overruling of objections to the complaint, since such ruling might become harmless, if for any reason the court should refuse the appointment of appraisers. The appointment of appraisers is the efficient act which adjudicates finally the regularity of the prior proceedings, and the power and right of the plaintiff to make the proposed appropriation of property. It is not necessary that an appeal be formally prayed both from the overruling of objections and the appointment of appraisers, but an interlocutory appeal taken from the order appointing appraisers may include and present for decision all prior adverse rulings to which exceptions have been duly saved by the appellant.

Appellants have prepared a full index to the record which constitutes the first four pages of the transcript, and appellees insist that this is not in compliance with rule 2. three of this court, which requires the preparation of an index "to form the first page of the transcript." The plain purpose of this rule is to require the preparation of an adequate index, and to fix its position with reference to the other parts of the record, so as to facilitate the work of the court. The objection to the index in this case is excessively critical and without merit. The designation of a place for the index is, in its nature, directory, and noncompliance therewith would vest no substantive right in the adverse

party.   Other objections to the record have been removed by the return to a writ of *certiorari*, and the motion to dismiss the appeal is overruled.

The complaint contains all the formal averments required by the statute, prescribing the practice in condemnation proceedings, and must be held sufficient in this respect.

3.   §930 Burns 1908, Acts 1905, p. 59, §2; *Vandalia Coal Co.* v. *Indianapolis, etc., R. Co.* (1907), 168 Ind. 144; *Southern Ind. R. Co.* v. *Indianapolis, etc., R. Co.* (1907), 168 Ind. 360, 13 L. R. A. (N. S.) 197.

Appellants' paramount contention is that appellee is not vested with the power of eminent domain, and cannot appropriate the rights described for the purpose declared, because the same is not a public use.  The stat-

4.   clared, because the same is not a public use.  The statutory authority for the proceeding upon which appellee relies reads as follows:  ''A writ of assessment of damages may be had by application to the circuit or other proper court of the county where the damages to be assessed may be occasioned, under the regulations and in the cases following: First.  By any person owning the land on one side of a watercourse upon which he desires to erect a mill or other machinery to be propelled by water.  *  *  *  Third.  To assess the probable amount of damages to the lands, creek or spring of another, or the improvements thereon, by the overflow of water or otherwise, which may be occasioned by any mill-dam already erected or proposed to be erected.''  §927 Burns 1908, §883 R. S. 1881.  This statute is found in the revision of 1852 (2 R. S. 1852, p. 188), and has been held to apply to mills already constructed, as well as to those to be erected, and to authorize the writ of assessment of damages in every case, without exception, where the mill has been erected prior to an assessment.  §911 Burns 1901, §899 R. S. 1881; *Wright* v. *Pugh* (1861), 16 Ind. 106.  The allegations of the complaint bring appellee within the provisions of the statute conferring the power of eminent domain to acquire such easements as are sought to be taken by this proceeding.

The remaining question, then, is whether the proposed use for which the rights described are to be taken is a public one. Whether a particular use is public or private is a judicial question, and must be determined by the courts. A presumption exists in favor of the public character of a use declared by the legislature to be public, but it is not conclusive upon the courts. *Town of Rensselaer* v. *Leopold* (1886), 106 Ind. 29, 32; *Heick* v. *Voight* (1887), 110 Ind. 279, 285; *Mull* v. *Indianapolis, etc., Traction Co.* (1907), 169 Ind. 214; Mills, Eminent Domain (2d ed.), §10; 1 Lewis, Eminent Domain (3d ed.), §§251, 256, 263, 265.

To make a use public in the sense in which that term is used in this connection, it is not necessary that the whole community or any large portion thereof may actually participate in it, but only that a right to its enjoyment exist in the general public. If a use is public in this sense the courts will not be justified in refusing to acknowledge and sanction such public use merely because of an incidental private advantage. *Mull* v. *Indianapolis, etc., Traction Co., supra; Richland School Tp.* v. *Overmyer* (1905), 164 Ind. 382; *Ross* v. *Davis* (1884), 97 Ind. 79, 83.

An early territorial law prescribed the toll to be taken by water- wind- and horse-power grist-mills, made the owners of mills accountable for the safe-keeping of all grain received to be ground, and for the bags, duly marked, containing the same, required sealed measures to be kept, and the grinding to be done in turn, and authorized the owner of water-mills to obtain a writ of *ad quod damnum* to determine the damages to others occasioned by overflowing waters from the dam. Laws of Indiana Territory 1807, pp. 192–199. A subsequent General Assembly passed an act supplementary to the statute before mentioned respecting grist-mills and millers, in which it was formally declared "that every water grist-mill already built, or which shall hereafter be built, that hath or shall at any time grind for toll, shall be held and deemed, and is hereby declared to be a public

mill.'' Acts 1810, p. 71. The Constitution of 1816 followed, in which it was provided ''that no man's particular services shall be demanded or property taken or applied to public use, without the consent of his representatives, or without a just compensation made therefor.'' Constitution 1816, Art. 1, §7; Acts 1817, p. 4. The first General Assembly after the organization of the State passed another supplementary act authorizing the writ of *ad quod damnum* to acquire ground for a mill-race or canal. Acts 1817, p. 169. The next session of the General Assembly passed an act regulating gristmills and millers, and repealing all former laws, except so much thereof as allowed and regulated writs of *ad quod damnum*. Acts 1818, p. 317. In the case of *Kepley* v. *Taylor* (1819), 1 Blackf. 492, 494, in discussing the purpose and intention of the legislature, and reasons for allowing the writ of *ad quod damnum* under the act of 1807, *supra*, Justice Blackford said: ''The important advantage of mills to the inhabitants of the country in general, is too obvious to require any elucidation.    *    *    *    Few sites are to be found where a mill can be erected without so raising the water as more or less to affect the property of other persons besides the owner of the mill. If no remedy was provided for this inconvenience, the consequences would be, that every person, whose land was in any degree injured, would be entitled to an action for the damage sustained, and being once entitled to recover, he would be entitled to recover again and again for every continuance of the injury, as long as the dam would remain. In this situation of things, no man would build a mill, unless he was able first to purchase all the lands contiguous to, or that would be in any degree injured by, the dam.    *    *    *    It has been deemed good policy, in most of the states, for public benefit, to grant certain privileges to such persons as wish to build mills, and at the same time to impose upon them certain restraints consistent with the general good.''

The General Assembly of 1823-4 reënacted the statute of 1807, *supra,* granting the writ of *ad quod damnum* (R. S. 1824, p. 426), and also passed a new act regulating grist-mills and millers (R. S. 1824, p. 267). The *ad quod damnum* statute was carried forward into the revisions of 1831 (R. S. 1831, p. 65), and 1838 (R. S. 1838, p. 59). A new regulative act, with some additions, was passed in 1831 (R. S. 1831, p. 373), and carried forward into the revision of 1838 (R. S. 1838, p. 415). These statutes were again revised and elaborated in 1843 (R. S. 1843, pp. 408, 944). The constitutional validity of those statutes was under consideration by this court in the case of *Hankins* v. *Lawrence* (1846), 8 Blackf. 266, 268, and Justice Blackford said: ''The Constitution says that no man's property shall be taken or applied to public use, without a just compensation being made therefor. Constitution, Art. 1, §7. Since the commencement of our state government, we have always had statutes authorizing writs or *ad quod damnum.* By virtue of such writs, persons are enabled to procure the land of others necessary for the abutment of dams for grist-mills, without the owners' consent, by making compensation. These statutes are supported on the ground of the benefit of such mills to the public. This court has repeatedly, and, we have no doubt, correctly, recognized these statutes as valid.''

The constitutional convention of 1851 readopted, in substance, article 1, §7, of the Constitution of 1816. Const., Art. 1, §21. This provision of the former Constitution having been considered and construed by the court, and adjudged to authorize lands to be condemned for the construction of mills and mill-dams, article 1, §21, of the present Constitution is indelibly impressed with that construction. *Stoy* v. *Indiana, etc., Power Co.* (1906), 166 Ind. 316; *Gillespie* v. *State* (1907), 168 Ind. 298, 310–311.

The first General Assembly convened under the new Con-

stitution passed an act by which the name of the writ was changed from *ad quod damnum* to a writ of assessment

4. of damages, and its issuance was authorized for the same purposes as those named in former statutes. 2 R. S. 1852, p. 188.

The statute of 1852 authorizing the issuance of writs for the assessment of damages for certain purposes in connection with the erection of mill-dams has remained in force, without alteration, until the present time. §927 Burns 1908, §883 R. S. 1881. Since the adoption of the present Constitution the validity of this grant of power has been either expressly affirmed or tacitly recognized in many decisions of this court. *Anderson* v. *Kerns Drainage Co.* (1860), 14 Ind. 199, 202, 77 Am. Dec. 63; *Wright* v. *Pugh* (1861), 16 Ind. 106; *Lane* v. *Miller* (1861), 17 Ind. 58, 61; *Snowden* v. *Wilas* (1862), 19 Ind. 10, 15, 81 Am. Dec. 370; *Lane* v. *Miller* (1864), 22 Ind. 104; *Miller* v. *Stowman* (1866), 26 Ind. 143; *Larsh* v. *Test* (1874), 48 Ind. 130; *Ogle* v. *Dill* (1878), 61 Ind. 438; *Bristol Hydraulic Co.* v. *Boyer* (1879), 67 Ind. 236; *Test* v. *Larsh* (1881), 76 Ind. 452.

The statute of 1851, regulating the toll which may be charged by water grist-mills, making the owner of every mill liable for the value of all grain deposited at his mill and for the bag or cask containing such grain, requiring grinding to be done in turn, compelling the miller to carry into and out of his mill, load and unload, on demand, grain brought to be ground, and to post rates of toll—has remained in force continuously up to the present time. 1 R. S. 1852, p. 372, §§8565-8568 Burns 1908.

The act of 1905 (Acts 1905, p. 59, §1, §929 Burns 1908) provides that any person, corporation or other body, having the right to exercise the power of eminent domain for any public use, under any statute existing or hereafter passed, may do so by conforming to the uniform procedure prescribed by that act. It is thus made plain that the proprietors of water grist-mills within the territory comprising this State,

for more than one hundred years, have had and still have express statutory authority to exercise the power of eminent domain for the purposes declared in appellee's complaint. The public character of such use has been declared by legislative enactment, adjudged by this court, and tacitly acknowledged in the Constitution, and at no time authoritatively denied or questioned. It is within the common knowledge of the members of this court, as well as of other men, that the public is not now so vitally dependent upon the operation of water grist-mills as it was in earlier times; but such of these mills as continue in existence are *quasi*-public institutions, are in the enjoyment and exercise of a public franchise, and remain subject to the regulating police power of the State. The complaint in this case avers that appellee was incorporated to conduct a milling business on the toll system; that it is the owner of a water grist-mill, with a right to maintain a three-foot dam, and it is therefore required to perform its duties to the public in accordance with the statutory provisions regulating its business operations. It is not necessary, to make a use public, that the whole community or any great portion of it may actually participate in or enjoy such use, but only that the general public, or a considerable portion thereof, have the right to avail themselves of the use. It is within the province of the legislature to revoke or repeal the au-

8.    thority granted to the owners of water-mills to exercise the power of eminent domain, whenever, in the judgment of that department, the public convenience no longer requires or justifies the continuance of such power; but, until such legislative action shall be taken, we cannot, in view of the well-settled policy of this State, declare that such use is not of a public character within the meaning of our Constitution. This holding is in accord with the decisions in other states, less firmly bound by the past than are we on this question. In the case of *Harding* v. *Funk* (1871), 8 Kan. 315, 324, Valentine, J., said: "It is not necessary for us to say what would be our decision upon this question if the same

was a new question in this country.    But it is not a new question.    It has been long and well settled by legislative, executive and judicial construction, practice and usage; and we are not now at liberty to depart from such construction, practice and usage.'' *Vernard* v. *Cross* (1871), 8 Kan. 248; *Burnham* v. *Thompson* (1872), 35 Iowa 421; *Jordan* v. *Woodward* (1855), 40 Me. 317; *Ingram* v. *Maine Water Co.* (1904), 98 Me. 566, 57 Atl. 893; *Miller* v. *Troost* (1869), 14 Minn. 365; *Traver* v. *Board, etc.* (1883), 14 Neb. 327, 15 N. W. 690, 45 Am. Rep. 111; note to *Henderson* v. *City of Lexington* (1908), 22 L. R. A. (N. S.) 20, 140.    It follows that the court did not err in overruling appellants' fourth objection to the complaint.

It is further contended that the evidence was insufficient to justify the appointment of appraisers.    The material facts alleged in the complaint were fairly established, and no error was committed by this action of the court.

No error appearing in the record, the judgment is affirmed.