WESTPORT STONE COMPANY *v.* THOMAS ET AL.

[No. 21,305.   Filed March 10, 1911.]

1. EMINENT DOMAIN.—*Right of.*—The legislature has the power to determine when convenience or necessity requires the exercise of the right of eminent domain, and when not in violation of the Constitution its declaration will be upheld.   p. 321.

2. EMINENT DOMAIN.—*Public Use.—Presumptions.*—Whether a particular use is public or private is a judicial question, there being a presumption, however, that a use declared to be public by the legislature is so in fact.   p. 322.

3. RAILROADS.—*Lateral.—Public Use.—Eminent Domain.*—Under §§5398-5404 Burns 1908, §§3987-3993 R. S. 1881, providing that any owner or owners of quarries may construct a lateral railroad, and for such purpose may exercise the power of eminent domain, a stone company has the right to condemn lands for a right of way for a lateral railroad "for the purpose of transporting stone for itself and for the purpose of transporting stone and other property and freight for the public generally, *   *   * and to act as a common carrier for hire for the public generally," the test being, not the number of people who use the way, or whether the condemning corporation is a private or a public one, but whether the use is public.   p. 322.

4. RAILROADS.— *Lateral.— Statutes.— Construction.— Validity.— Presumptions.*—The statutes (§§5398-5404 Burns 1908, §§3987-3993 R. S. 1881) authorizing the construction of lateral railroads, are presumed to be valid until the contrary is established, and should be construed *in pari materia* with other railroad laws.   p. 325.

5. RAILROADS.—*Lateral.—Building of.—Implied Agreements.*—Any person, firm, or corporation, that constructs a lateral railroad under the laws of this State (§§5398-5404 Burns 1908, §§3987-3993 R. S. 1881) thereby impliedly agrees that such road shall be open to the public use, upon equal terms; and this is true regardless of the allegations of the complaint for condemnation. p. 325.

6. RAILROADS. — *Lateral. — Constitutional Law.* — Sections 5398-5404 Burns 1908, §§3987-3993 R. S. 1881, providing for the construction of lateral railroads, are constitutional.   p. 326.

7. CORPORATIONS.—*Charters.— Powers.— Statutes.*—A corporation formed under a general law has the powers legally authorized in its articles of incorporation and also all powers granted by the laws governing such corporations.   p. 327.

8. CORPORATIONS.—*Powers.—Stone Companies.—Lateral Railroads.* —A company incorporated for the quarrying of stone has the right to construct and operate a lateral railroad.   p. 327.

9. RAILROADS.—*Lateral.*—*Extensions.*—The use of a branch road as a portion of a proposed lateral railroad constitutes such branch road a component part of such lateral railroad and opens it to the use of the public generally. p. 328.

10. RAILROADS.— *Lateral.*— *Complaint.*— *Objections.*— *General Denial.*—A general denial does not constitute a sufficient objection to a complaint for the condemnation of a lateral railroad right of way, and raises no issue of fact or of law, the plaintiff being required to prove the essential allegations of the complaint, before appraisers are appointed, even if no objections are filed. p. 328.

11. APPEAL.—*Cross-Assignments.*—*When Not Considered.*—When cross-assignments of errors present the same questions that have been determined in the direct assignment, the cross-errors will not be determined. p. 330.

From Decatur Circuit Court; *Marshall Hacker*, Judge.

Action by the Westport Stone Company against Maria Thomas and others. From a judgment for defendants, plaintiff appeals. *Reversed.*

*Davison Wilson* and *George W. Bruce*, for appellant.
*John F. Goddard* and *John W. Craig*, for appellees.

MONKS, J.—Appellant, a corporation organized under the laws of this State governing the incorporation of manufacturing and mining companies, brought this proceeding to condemn a right of way for a lateral railroad over and upon the lands of appellees, under the provisions of §§929–940, 5398–5404 Burns 1908, Acts 1905 p. 59, Acts 1907 p. 306, §§3987–3993 R. S. 1881.

It appears from appellant's complaint, which is in one paragraph, among other things, that it is a corporation engaged in quarrying and selling stone to the public generally; that it is the owner of certain described real estate on which are located two quarries, known as the Magee Stone Quarry and the Hollensbe Stone Quarry; that appellees own the land between said quarries, and that a railroad, owned and operated by appellant, connects the Hollensbe Stone Quarry with the tracks of the Cleveland, Cincinnati, Chicago and St. Louis Railway Company; that appellant desires

to construct a lateral railroad from the Magee Stone Quarry to the railroad already constructed to the Hollensbe Stone Quarry, and thus connect said Magee quarry, by a lateral railroad, with said railroad. The complaint describes in detail the proposed route, which is less than ten miles in length, and further alleges that such lateral railroad is to be used " for the purpose of transporting stone for itself, and for the purpose of transporting stone and other property and freight for the public generally, * * * and to act as a common carrier for hire for the public generally."

Each appellee filed twenty-nine objections to said complaint, fourteen of which were sustained, the others being overruled. Appellant refused to plead further, and final judgment was rendered in favor of appellees.

The assignment of errors calls in question the action of the court in sustaining said objections.

A part of the objections sustained by the court assert that appellant, being a corporation organized and existing under the manufacturing and mining laws as a stone company, has no right to exercise the power of eminent domain to condemn appellees' lands, for the reason that the quarrying and transporting of stone is not a public, but a private use, and that therefore the act of 1869 (Acts 1869 [s. s.] p. 97, §§3987–3993 R. S. 1881, §§5398–5404 Burns 1908) is void because it violates the provisions of the state Constitution and the 14th amendment to the Constitution of the United States.

The other objections sustained by the court assert that appellant, being a corporation organized under the manufacturing and mining laws, has no authority to engage in the business of a common carrier.

It is settled that the legislature has the power to determine when convenience or necessity requires the exercise of the right of eminent domain, and when it is so declared, within constitutional limits, courts cannot question such declaration. *Consumers Gas Trust Co.*

1.

v. *Harless* (1892), 131 Ind. 446, 452, 15 L. R. A. 505; *Richland School Tp.* v. *Overmyer* (1905), 164 Ind. 382; *Water-Works Co.* v. *Burkhart* (1872), 41 Ind. 364, 370; *Speck* v. *Kenoyer* (1905), 164 Ind. 431; note to *Moore* v. *Sanford* (1890), **7 L. R. A. 151.** But whether a particular use is public or private is a judicial question, and

2. must be determined by the courts. A presumption exists, however, in favor of the public character of a use declared by the legislature, but it is not conclusive upon the courts. *Sexauer* v. *Star Milling Co.* (1910), 173 Ind. 342, 26 L. R. A. (N. S.) 609, and authorities cited.

The courts are not entirely harmonious in their decisions as to what constitutes a public use. Note to *Al-*

3. *bright* v. *Sussex County, etc., Park Com.* (1904), 2 Am. and Eng. Ann. Cas. 48, 50, 51.

It is said in 3 Thompson, Corporations (2d ed.) §2743: "Conceding the rule that property can only be taken for a public use, the difficulty encountered is usually in the determination of what constitutes a public use. The term itself is difficult of exact definition, but it is conceded that public benefit is one of the essential characteristics of a public use. The opinions of the courts have undoubtedly been tempered by harmonizing public use with public benefit and public utility, as well as the general welfare of the state. Indeed, the determination of the question may depend somewhat on the nature of the wants of the community for the time being. However, it is settled that instrumentalities which tend to promote the manufacturing industries of the state, to develop and utilize its natural resources and advantages, to create the need of markets for its products, and to furnish labor for its mechanics, are of great public benefit, and may constitute the required public use. These general principles are supported by many cases showing a great variety in their application." Citing many cases.

It has been held by this court that the test as to whether a use is a public or a private one is not simply how many

persons actually use the way condemned for the purpose for which it is condemned, but whether the public has the right to its use without discrimination. *Bedford Quarries Co. v. Chicago, etc., R. Co.* (1911), *ante,* 303, and authorities cited; *Sexauer* v. *Star Milling Co., supra,* and cases cited; *Phillips* v. *Watson* (1884), 63 Iowa 28, 18 N. W. 659; 2 Wood, Railroads (2d ed.) p. 828; 1 Lewis, Eminent Domain (3d ed.) §264; 2 Elliott, Railroads (2d ed.) p. 515.

The fact that the construction of such a lateral railroad may or will subserve a private interest does not change the character of the use from a public use to a private one. As has been said, " the mere fact that the primary purpose of a lateral railroad is to accommodate a particular private enterprise is not a controlling test. The character of the use whether public or private is to be determined by the extent of the right of the public to use it and not by the extent to which the right is or will be used." 15 Cyc. 590, 591, and cases cited; *South Chicago R. Co.* v. *Dix* (1883), 109 Ill. 237, 17 Am. and Eng. R. Cas. 157; *St. Louis, etc., R. Co.* v. *Petty* (1893), 57 Ark. 359, 21 S. W. 884, 20 L. R. A. 434; *Greasy Creek Min. Co.* v. *Ely Jellico Coal Co.* (1909), 132 Ky. 692, 116 S. W. 1189; *Chesapeake Stone Co.* v. *Moreland* (1907), 126 Ky. 656, 104 S. W. 762, 16 L. R. A. (N. S.) 479; *Butte, etc., R. Co.* v. *Montana, etc., R. Co.* (1895), 16 Mont. 504, 41 Pac. 232, 50 Am. St. 508, 31 L. R. A. 298; *Phillips* v. *Watson, supra; Morrison* v. *Thistle Coal Co.* (1903), 119 Iowa 705, 94 N. W. 507; *New Central Coal Co.* v. *George's Creek Coal, etc., Co.* (1873), 37 Md. 537; *New York Min. Co.* v. *Midland Min. Co.* (1904), 99 Md. 506, 58 Atl. 217; *Deitrich* v. *Murdock* (1868), 42 Mo. 279; *DeCamp* v. *Hibernia, etc., R. Co.* (1885), 47 N. J. L. 43; *Hays* v. *Risher* (1858), 32 Pa. St. 169; *Boyd* v. *Negley* (1861), 40 Pa. St. 377; *Brown* v. *Corey* (1862), 43 Pa. St. 495; *Ulmer* v. *Lime Rock R. Co.* (1904), 98 Me. 579, 57 Atl. 1001, 66 L. R. A. 387, and cases cited; *Farnsworth* v. *Lime Rock R. Co.* (1891), 83 Me. 440, 22 Atl. 373; *Zircle* v. *Southern R. Co.* (1903), 102 Va. 17,

45 S. E. 802, 102 Am. St. 805, and note pp. 813–821; *Madera R. Co.* v. *Raymond Granite Co.* (1906), 3 Cal. App. 668, 87 Pac. 27; *Shasta Power Co.* v. *Walker* (1906), 149 Fed. 568; *Holly Shelter R. Co.* v. *Newton* (1903), 133 N. C. 132, 45 S. E. 549; *Beekman* v. *Saratoga, etc., R. Co.* (1831), 3 Paige *45, 22 Am. Dec. 679, and note p. 696; *Latah County* v. *Peterson* (1892), 3 Idaho 398, 29 Pac. 1089, 16 L. R. A. 81; *Ex parte Bacot* (1891), 36 S. C. 125, 15 S. E. 204, 16 L. R. A. 586; *Strickley* v. *Highland, etc., Min. Co.* (1906), 200 U. S. 527, 26 Sup. Ct. 301, 50 L. Ed. 581; *Hairston* v. *Danville, etc., R. Co.* (1908), 208 U. S. 598, 28 Sup. Ct. 331, 52 L. Ed. 637; note to *Pere Marquette R. Co.* v. *United States Gypsum Co.* (1908), 22 L. R. A. (N. S.) 181; 1 Lewis, Eminent Domain (3d ed.) §264; Nichols, Eminent Domain §221.

It is not a question whether appellant is a private or a public corporation, but whether the use is a public one. If it is to be so used, the right of condemnation can be bestowed upon any private corporation, but if not to be so used it cannot be conferred upon either a private or a public corporation. 1 Lewis, Eminent Domain (3d ed.) §§253, 274; *Butte, etc., R. Co.* v. *Montana, etc., R. Co., supra; F. W. Cook, etc., Co.* v. *Evansville, etc., Railway* (1910), *ante,* 3.

In the case last cited the court said: "It is held in the case of *County of Randolph* v. *Post* (1876), 93 U. S. 502, 23 L. Ed. 957, that a corporation with authority to 'construct, complete, and operate a railroad' is not the less a railroad company because it is also a coal, or a mining, or a furnace, or a manufacturing company. *Seymour* v. *City of Tacoma* (1893), 6 Wash. 147, 32 Pac. 1077. * * * It is well to note that in considering the right to exercise the power of eminent domain, the charter, or statute under which it was granted, or the charter of the corporation—whether private, or *quasi*-public—is not important. The prime and exclusive test may be said to be: Is the proposed use a public one? If the use is calculated to promote the public welfare, the

law will not stop to inquire whether the applicant is organized under this or that statute authorizing such organization."

Sections 5398–5404, *supra,* authorize the construction of lateral railroads, and grant the power of eminent domain. Said §5398 provides that " it shall be lawful for any owner or owners, or their lessees, of lands, mills, blast-furnaces, quarries, iron ore, coal mines, or other minerals or other real estate, or for any company of persons who shall desire to construct a lateral railroad, not exceeding ten miles in length, to locate and construct the same to any other railroad," etc.   Said section also gives the power of eminent domain, and prescribes the procedure.   The procedure is now governed by §§929–940.

It is settled that every possible presumption is in favor of the constitutionality of the lateral railroad act, and that this continues until the contrary is shown beyond a
4.   reasonable doubt.   The lateral railroad law (§§5398–5404, *supra*) is to be construed in connection with the other railroad laws of the State (*Meyer* v. *Town of Boonville* [1904], 162 Ind. 165, 170, and cases cited; *State* v. *Gerhardt* [1896], 145 Ind. 439, 460, 461, 33 L. R. A. 313, and authorities cited), and if it can be so construed and applied as to avoid conflict with the Constitution, and give it the force of law, such construction will be adopted.   *State* v. *Gerhardt, supra,* and authorities cited.

Appellant alleges in its amended complaint that such proposed lateral railroad is to be used " for the purpose of transporting stone for itself, and for the purpose of trans-
5.   porting stone and other property and freight for the public generally,   *   *   *   and to act as a common carrier for hire for the public generally."

Appellees contend that, notwithstanding these allegations, said lateral railroad will be only a private way, and will be used by appellant exclusively for transporting stone from its own quarries.   When appellant accepts and exercises the

power of eminent domain granted by §§5398–5404, *supra*, it thereby impliedly agrees that said lateral railroad shall be open to the public, to be used on equal terms by all who may at any time have occasion to use it, not merely by permission, but by right, even if the complaint in the condemnation proceeding were silent upon this subject. *Potlatch Lumber Co.* v. *Peterson* (1906), 12 Idaho 769, 88 Pac. 426, 118 Am. St. 233, 244.

The statement in appellant's complaint, therefore, that said lateral railroad is to be used " for the purpose of transporting stone and other property and freight for the public generally * * * and to act as a common carrier for hire for the public generally," was nothing more than the law would have implied, if it had not been stated therein. A lateral railroad built under said sections comes under and is governed by the general laws concerning the powers, rights, duties and obligations of railroads so far as applicable, and is subject to governmental regulation and control. It follows that the lateral railroad, being open to the public upon equal terms as of right, is a public use for which land may be condemned under the power of eminent domain, even though the number who require its use may be small. *Phillips* v. *Watson, supra; Morrison* v. *Thistle Coal Co., supra; Hayes* v. *Riser, supra; Brown* v. *Corey, supra; DeCamp* v. *Hibernia, etc., R. Co., supra.*

So construed, it is evident that §§5398–5404, *supra*, are not in violation of the Constitution of this State, or of the 14th amendment to the Constitution of the United States, so far as appellant and those engaged in like industries are concerned (*Clark* v. *Nash* [1905], 198 U. S. 361, 25 Sup. Ct. 676, 49 L. Ed. 1085, 4 Am. and Eng. Ann. Cas. 1171; *Strickley* v. *Highland, etc., Min. Co., supra*), even if they may not be valid as to the " owners or their lessees " of some of the properties named therein.

Statutes authorizing the owners of coal mines, mills and quarry companies to build railroads from such places to

existing railroads, canals and navigable streams, and to condemn land for that purpose, have been sustained in other states. 2 Elliott, Railroads (2d ed.) §961; 1 Lewis, Eminent Domain (3d ed.) §264.

Appellees cite the cases of *Wild* v. *Deig* (1873), 43 Ind. 455, 13 Am. Rep. 399, and *Logan* v. *Stogsdale* (1890), 123 Ind. 372, 8 L. R. A. 58, and other decisions of this court holding the private road law of this State unconstitutional, because it authorized the taking of private property for private ways, which was a private and not a public use. This was on the ground that such private roads were in fact what their name imports, and if established would belong to and be the property of the applicant, from which he could exclude the public, and which the public would have no right to use. Note (2) to *Zircle* v. *Southern R. Co.* (1903), 102 Am. St. 805, 826–828. These cases are not, therefore, in point here.

It is next contended by appellees that if appellant actually constructed said road, and sought to exercise the powers of a common carrier, such acts would be *ultra vires*, since by its articles of incorporation it is organized for the purposes only of mining, quarrying, producing, manufacturing and dealing in stone.

It may be admitted that such are the powers of the corporation, as shown by its articles of incorporation, and that a corporation can exercise no powers nor engage in any business not authorized by its charter. But it is well settled that the charter of a corporation, formed under a general law, consists of its articles of incorporation and the laws governing such corporation. *Bent* v. *Underdown* (1901), 156 Ind. 516, 519; *State, ex rel.,* v. *Anderson* (1903), 31 Ind. App. 34, 42; 1 Cook, Corporations (6th ed.) §2; 1 Thompson, Corporations (2d ed.) §172.

This being true, §§5398 *et seq., supra,* enter into and become a part of appellant's charter, and conferred upon it the right to construct and operate said railroad. Any other construction would nullify the effect of said statute.

But it is insisted by appellees that said proposed road will not connect with a common carrier of freight, but will connect with a pretended lateral road owned and operated by appellant. Appellant in its complaint alleges " that plaintiff proposes to use said proposed railroad,' thus connected, for the purpose of transporting stone for itself, and for the purpose of transporting stone and other property and freight for the public generally for hire in connection with and upon and in cars to be furnished by the Cleveland, Cincinnati, Chicago and St. Louis Railway Company over and upon said proposed road and the road already constructed. * * * And plaintiff proposes thus to act as a common carrier for hire for the public generally, thus permitting shipping of stone and other property and freight over and upon said proposed lateral railroad connected as aforesaid to said main line of the Cleveland, Cincinnati, Chicago, and St. Louis Railway Company's railroad, for the purpose of shipping over said main line to and for the public generally."

This in effect constitutes, if it is not already so, said spur or side-track already constructed from the Hollensbe Stone Quarry to tracks of the Cleveland, Cincinnati, Chicago and St. Louis railway, a lateral railroad to be used by the public generally, and the continuation sought to be added to said spur-- or side-track would make the whole one continuous lateral railroad less than ten miles in length.

One of appellees' objections to the complaint, which was sustained, was in the form of a general denial, and they insist that evidence should have been introduced by appellant on the issue so formed to establish the allegations of the complaint before final judgment could be pronounced.

The statute that governs the case provides that persons seeking to condemn land shall set forth certain facts in the complaint. §930, *supra.*

To this the defendant may file objections, and " such

objections shall be in writing, separately stated and numbered, and shall be filed not later than the first appearance of such defendant; and no pleadings other than the complaint and such statement of objection shall be allowed in such cause, except the answer provided for in section eight of this act." §933 Burns 1908, Acts 1905 p. 59, §5.

Said section eight (§936 Burns 1908) provides for the filing of exceptions to the report of the appraisers, and need not therefore be considered..

Such objections must be specific, not general, and, if they challenge the sufficiency of the complaint, perform the office of a special demurrer, and tender issues of law for the decision of the court upon the face of the pleadings. *Westport Stone Co.* v. *Thomas* (1908), 170 Ind. 91, 93, and cases cited. When, however, an objection sets up matter not apparent on the face of the complaint, it does not perform the office of a special demurrer, but of an answer, and tenders an issue of fact to be tried by the judge. *Morrison* v. *Indianapolis, etc., R. Co.* (1906), 166 Ind. 511, 526.

Did the general denial filed by appellees as one of their objections present any issue of fact? This is a special statutory proceeding, and it is well settled that before any one can avail himself of said statute he must, by the allegations of his complaint, bring himself within the provisions of the statute, and the proof at the hearing must sustain the essential facts alleged. *Morrison* v. *Indianapolis, etc., R. Co. supra.*

It is evident, therefore, in this case that appellant is required to prove the essential allegations of its complaint, which are set forth in §930, *supra*, before it is entitled to the appointment of appraisers, even if no objections are filed by the defendant. *Morrison* v. *Indianapolis, etc., R. Co., supra; Castle* v. *Bell* (1896), 145 Ind. 8, 10.

The general denial is not therefore a proper objection in such a proceeding, and it raised no issue of fact or law, and should have been overruled.

It follows that the court erred in sustaining the objections to the complaint.

Appellees have assigned cross-errors calling in question the action of the court in overruling certain objections filed to the amended complaint. But as they present the same questions presented by the assignment of errors, what we have already said determines these questions against the contention of appellees. We hold, therefore, that the court did not err in overruling said objections to the complaint.

Judgment reversed, with instructions to overrule each objection to the complaint, and for further proceedings not inconsistent with this opinion.