INDIANAPOLIS OOLITIC STONE COMPANY ET AL. *v.*
ALEXANDER KING STONE COMPANY.

[No. 25,489.   Filed March 30, 1934.]

414

*Isaac Born and Theophilus J. Moll, John F. Regester,* and *Louis B. Ewbank,* for appellants.

*James B. Wilson,* for appellee.

TREANOR, J.—The appellee brought this action alleging that it is a Kansas corporation, licensed to do business in Indiana, and is the equitable owner of certain lands in Monroe County (describing them) on which it has opened and is operating a stone quarry; that to market its stone a railroad connection with the quarry is absolutely necessary; that there is no accessible or practical way of reaching any railroad except by the construction of a lateral railroad (under the provisions of §13218, Burns Ann. Ind. St. 1926, §55-2601, Burns 1933, §14273, Baldwin's 1934; Acts 1869, Sp. Sess., ch. 46, p. 97, which grants the power of eminent domain) for a distance of 1500 feet over a tract of land owned in common by twenty of the appellants (who are herein designated as the Malott heirs) and for a distance of 1115 feet over the

present track and right of way of the lateral railroad of the appellant, Indianapolis Oolitic Stone Company, to the Chicago, Indianapolis and Louisville Railroad, known as the Monon. It is alleged that a survey and profile of the proposed lateral railway had been made and blueprints thereof are attached as exhibits, and that a good faith effort was made to purchase the right of way but that plaintiff was unable to agree with the owners on any terms of purchase. The prayer was for the appointment of appraisers, etc. (in conformity with the provisions of §§7680-7691, Burns Ann. Ind. St. 1926, §§3-1701—3-1712, Burns 1933, §§14061-14072, Baldwin's 1934, Acts 1905, ch. 48, p. 59).

The Malott heirs, by Louis B. Ewbank et al., trustees under the will of Volney T. Malott, deceased, severally filed exceptions in ten paragraphs, and the Indianapolis Oolitic Stone Company filed exceptions in sixty-five paragraphs, to the complaint. Trial was had and upon defendants' request a special finding of facts was made and conclusions of law were stated thereon, viz: that the law was with the plaintiff (appellee) and that it was entitled to appropriate a right of way as described over the lands of the defendants. Judgment was rendered appointing appraisers to assess the damages to be sustained by the appropriation and condemnation of the right of way.

The facts specially found, so far as necessary to an understanding of our decision, are as follows:

(12) Appellee has surveyed and laid out a line for the proposed lateral railroad or switch extending upon and along the track and right of way of the appellant Indianapolis Oolitic Stone Company for its whole length and thence to the south line of the land of the Malott heirs, co-appellants (the north line of appellee's land). The route is specifically described from its eastern terminus at plaintiff's quarry to the western terminus, the

side track of the Monon, and it is found "that the lands of the defendants described in the complaint are intervening lands, lying and intervening between the two termini of said proposed lateral railroad or switch."

(13) The lateral railroad or switch so laid out is 2,615 feet in length and would have a maximum grade of 4%, would enter the quarry at a grade 10 feet below the top of the ledge of stone therein. The cost of its construction would be $7,500.00, and the route would not require cutting into or directly connecting with the main line of the Monon, would not require the construction of any bridge across any creek, nor the use of a switch-back. It would not require connection with any other switch or side track near to any bridge or safety appliances and that such route "is the most feasible, least expensive to construct, least hazardous and the shortest practical route for a lateral railroad or switch from said quarry to the Monon railway."

(15-16) The main line of the Monon enters upon the 240-acre tract on which appellee's stone quarry is located at the south line of said tract, extends northward across the west end of the tract for a total distance of 220 rods and then crosses the west line of the tract 20 rods south of the northwest corner thereof.

(17-19) The lands of the appellants do not intervene between appellee's quarry and any point on the main line of the Monon where the Monon crosses and is located upon appellee's 240-acre tract, and such main line can be reached by appellee from said stone quarry without crossing the lands of any other owner. There are two practical and feasible routes for a lateral railroad or switch from appellee's quarry to the main line of the Monon, both entirely upon appellee's own land. One of these would require the crossing of a creek by means of a bridge and the construction of 3,600 feet of track at a cost of $26,000.00, including the cost of the bridge, and

would require the cutting of the main line of the Monon. The other route would require the construction of 3,500 feet of track southwest and south from the quarry and then doubling back to the north at a cost of $17,000.00 for track construction.

(23) "That in the business of quarrying stone for building purposes the only possible means of transporting the same to market is by means of railroad cars, locomotives and tracks; that plaintiff has no present connection by means of railroad cars, locomotives and tracks between its said quarry and any railroad and that a reasonable public necessity exists for the construction of a lateral railroad or switch for the purpose of connecting said railroad with the markets for stone to be quarried therefrom."

The statute (§§13218, *et seq.*, Burns, etc., *supra*) under which this appellee seeks to exercise the power of eminent domain authorizes the condemnation of a right of way for the purpose of constructing a "lateral railroad" for not more than ten miles in length to "any other railroad, canal, or slack-water navigation, on, over, through or under any intervening lands." The power to appropriate is definitely limited to a route over "intervening lands" and there is no power to appropriate the "most advantageous route"[1] over lands without reference to their relative location. Evidently the purpose of the statute was to enable the owners of lands containing deposits of stone, coal, and other minerals to obtain a right of way over "intervening lands" which cut off access to a "railroad, canal or slack-water navigation." The statute does not purport to confer the broad power of eminent domain which railroads exercise, and by virtue of which a railroad corporation can determine for itself the location of the termini of the pro-

*Note 1.* As in the case of a railroad corporation, generally. See §12931, Burns Ann. Ind. St. 1926, §14099, Baldwin's 1934; 1 R. S. 1852, ch. 83, p. 409.

posed road and the route to be followed. When the power of eminent domain is granted to a private corporation or individual it can be exercised only to the extent and for the purposes permitted by the terms of the legislative act. To that effect is the following declaration of this court:

"The power of eminent domain—the 'right to appropriate for public use the private property of the citizen against his will, has been characterized as a 'very high and dangerous one,' and appellee cannot exercise that power for the purpose named in this proceeding unless it is able to show clear legislative authority for so doing." (Citing cases.) *Kinney* v. *Citizens Water, etc., Co.* (1909), 173 Ind. 252, 90 N. E. 129.

Also:

"A grant of the power of eminent domain, which is one of the attributes of sovereignty most fraught with the possibility of abuse and injustice, will never pass by implication, and when the power is granted, the extent to which it may be exercised is limited to the express terms or clear implication of the statute in which the grant is contained." 10 R. C. L. §168 and cases cited in note 13.

We think that "intervening lands" as used in the statute in question must refer to lands which are so situated as to cut off access to a "railroad, canal or slack-water navigation." It will be observed from the accompanying plat that appellants' lands, in their relation to appellee's quarry and the Monon railroad, normally would be designated as adjoining appellee's land rather than as intervening between appellee's land and the railroad; for certainly appellants' lands cannot be said to cut off appellee's lands from access to the railroad, when the railroad actually traverses, for 220 rods, the west end of appellee's tract of 240 acres. But since the purpose of the statute is to enable owners of quarries or mines to reach a "railroad, canal or slack-water navigation" we think that appellants' lands reasonably can be treated as inter-

vening lands, within the meaning of the statute, if topographical features of appellee's tract in fact do cut off access to the railroad from appellee's quarry and make it necessary to cross appellants' lands in order to have a feasible route to the Monon railroad from appellee's quarry. That view of the statute requires a showing of at least a reasonable necessity for acquiring a right of way over the adjoining land.

The necessary import of the findings above set out is as follows:

(1) That appellee's (condemnor's) lands are crossed by the Monon railroad to which appellee is seeking a right of way over appellants' lands.

(2) That appellants' lands do not intervene between the railroad and appellee's 240-acre tract upon which the quarry is located in the sense that they cut off appellee's access to the railroad.

(3) That there are three feasible routes from appellee's quarry to the Monon, of which two are entirely upon appellee's lands and one across appellants' lands.

(4) The most feasible route is across appellants' lands, the factors which make it the *"most feasible"* being (1) lower cost of construction, (2) avoidance of a switchback, (3) avoidance of an additional direct connection with the main track of the Monon.

(5) That there is a reasonable public necessity for the construction of "a lateral railroad or switch for the purpose of connecting said railroad (quarry) with the markets for stone to be quarried therefrom."

There is no express finding that a reasonable necessity exists for the appropriation of a right of way over appellants' lands. On the contrary the findings show two feasible routes over appellee's own land, both of which have a better grade than the one over appellants' lands. The findings respecting the difference of cost and convenience to appellee and to the Monon, as between the proposed route and the routes over appellee's land, cannot support an inference of reasonable necessity for the route over appellants' lands, in the face of the express findings that the suggested two routes over appellee's land are both feasible.

The proposed appropriation includes the track and right of way of appellant Indianapolis Oolitic Stone Company, which track is used by the company for the transportation of stone from its quarry to a switch of the Monon railroad. The act authorizes owners of quarries "who shall desire to construct a lateral railroad . . . to any other railroad . . . on, over, through or under any intervening lands . . .

to enter upon such intervening lands . . . and lay out a route," etc. We do not think that the General Assembly by the foregoing provisions, intended to enable appellee to acquire appellant's completed lateral railroad, and nothing in the statute purports to authorize the appropriation of a joint interest or use. That appellant acquired the right of way for its lateral railroad by purchase does not affect its rights as against appellee's claim to take by condemnation under the statute.

In determining the extent of appellee's privilege of exercising the power of eminent domain as against the Indianapolis Oolitic Stone Company we must recognize that appellee's business is not that of a common carrier and that the statute in question grants the power of eminent domain only for the purpose of enabling appellee and others to market their products, and not to enable them to furnish service to the public as a common carrier. It is true that in *Westport Stone Co.* v. *Thomas* (1911), 175 Ind. 319, 94 N. E. 406, this court upheld the constitutionality of the act in question on the ground that the lateral switch, when constructed, would "be open to the public to be used on equal terms by all who may at any time have occasion to use it." We are convinced, however, that the act does not invest the owner of a quarry or mine with the character of a common carrier or with the duties and privileges of a common carrier. We think the validity of the grant of the power of eminent domain must rest upon the ground that the state has such an interest in the development of its natural resources that the General Assembly can treat the business of mining or quarrying as a "public use." Mining and quarrying are vitally connected with our recognized public policy of developing our natural resources; and we believe that the development and operation of our

mines and quarries is of such public interest and benefit to the state and to the communities in which they are situated that mining and quarrying "may properly be regarded as a public use for which the power of eminent domain may be delegated," (54 A. L. R. 58, et seq.) for the purpose of securing what is, in effect, a way of necessity.[1]

It follows from the foregoing that a "lateral railroad" of a mine or quarry is merely an instrumentality, a part of the necessary equipment of the mine or quarry and is not subject to a right of public user any more than is the transmission line of an electric power company. Consequently appellee cannot, as a matter of right, demand the use of appellant's tracks nor appropriate the same by condemnation on the ground that appellee is a railroad company with the privileges and burdens of a common carrier. Appellee's right to eminent domain is restricted by the statute to the acquiring of a right of way over "intervening lands" for the purpose of building a "lateral railroad;" and, as stated above, does not include the right to appropriate either appellants' lateral railroad or a use thereof.

We are not deciding that the General Assembly cannot regulate the use of lateral railroads constructed by mine and quarry owners so that two or more quarry or mine owners may use the same lateral; and obviously such a decision would be inconsistent with our present holding that the business of mining or quarrying is a "public use" and affected with a public interest. We simply decide that the present "lateral railroad" act does not so provide.

The trial court should have sustained appellant

---

Note 1. For general discussion of the doctrine of public use in Indiana, see *Hawkins* v. *Lawrence* (1846), 8 Blackf. 266; *The Consumers' Gas Trust Co.* v. *Harless et al.* (1891), 131 Ind. 446, 29 N. E. 1062; *Sexauer* v. *Star Milling Co.* (1909), 173 Ind. 342, 90 N. E. 474.

Indianapolis Oolitic Stone Company's exceptions to appellee's petition. Also the findings did not support the conclusions of law in favor of appellee. Judgment is reversed with directions to restate conclusions of law in favor of appellants and enter judgment in favor of defendants refusing to appoint appraisers.