(158 App. Div. 393.)

LONG SAULT DEVELOPMENT CO. v. KENNEDY, State Treasurer.

PEOPLE ex rel. BALL v. SAME.

(Supreme Court, Appellate Division, Third Department. September 10, 1913.)

1. MANDAMUS (§ 10*)—PERSONS ENTITLED TO RELIEF—INJURY BY NEGLECT OF DUTY.

A company incorporated under Laws 1907, c. 355, to develop water power from a navigable stream, for which purpose it must get the consent of the federal government, is injured by the refusal of the State Treasurer to accept money it is required to pay to the state under that act, so that the company can mandamus the Treasurer to accept the money, where the refusal was based upon the ground that the statute was unconstitutional; since such a refusal constituted a cloud upon the company's franchise which would prejudice its efforts to gain the consent of the federal government.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 37; Dec. Dig. § 10.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. MANDAMUS (§ 71*)—ACTS OF PUBLIC OFFICER—MINISTERIAL ACT.

The performance of a ministerial act will be enforced by mandamus.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. § 133; Dec. Dig. § 71.*]

3. MANDAMUS (§ 23*)—PERSONS ENTITLED TO RELIEF—TAXPAYER.

A taxpayer may maintain mandamus to compel the State Treasurer to collect the amount due from a corporation incorporated under Laws 1907, c. 355.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 55–58; Dec. Dig. § 23.*]

4. CONSTITUTIONAL LAW (§ 46*)—PROCEEDINGS RAISING QUESTION—CONSTITUTIONALITY OF STATUTE.

The constitutionality of an act incorporating a company is directly raised in mandamus to compel the State Treasurer to receive the money required to be paid by that act; since the writ will not lie to compel the officer to act under an unconstitutional statute.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 43–45; Dec. Dig. § 46.*]

5. STATUTES (§ 79*)—SPECIAL LAWS—GRANT OF PRIVILEGES—WATER POWER SITE.

Laws 1907, c. 355, incorporating a water power company, and granting to it the right to construct a dam and develop power at a certain point on the St. Lawrence river, is not contrary to Const. art. 3, § 18, prohibiting private or local bills granting an exclusive privilege; since the exclusiveness thereby prohibited is one created by the nature of the grant and not one which results from the nature of the property or right granted.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 84, 85; Dec. Dig. § 79.*]

6. WOODS AND FORESTS (§ 8*)—FOREST PRESERVES—CONVEYANCE BY STATES—CONSTITUTIONAL PROVISIONS.

Laws 1907, c. 355, incorporating a water power company and granting to the corporation the land under the water of a stream, does not violate Const. art. 7, § 7, prohibiting the conveyance of the forest preserves, which, under Laws 1893, c. 332, § 100, include all lands owned by the state in the county in which the dam site was located, when no state lands adjoin the stream at that point, and it will not be presumed that the Legislature intended to include state lands under a stream not adjoining a forest as forest preserves.

[Ed. Note.—For other cases, see Woods and Forests, Dec. Dig. § 8.*]

7. STATUTES (§ 113*)—TITLE OF ACT—ACT CREATING CORPORATION.

Under the title of the act creating a private corporation, Laws 1907, c. 355, which mentioned the authority of the company to construct and maintain a dam, canals, and bridge at a certain point, the company may be authorized to collect tolls for travel over the bridge, and also to acquire the state lands under the water without violating Const. art. 3, § 16, providing that no private bill shall have more than one subject which shall be embraced in its title.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 141–144; Dec. Dig. § 113.*]

8. STATUTES (§ 64*)—EFFECT OF PARTIAL INVALIDITY—CORPORATE POWERS.

Even if those powers are not embraced in the title, they are not necessary to the operations of the company and may be separated from the other powers, so that the whole act will not be unconstitutional.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 58–66, 195; Dec. Dig. § 64.*]

9. STATUTES (§ 64*)—EFFECT OF PARTIAL INVALIDITY—CORPORATE POWERS.

If the Legislature cannot convey to a private corporation title to the land under a navigable stream, the provision of Laws 1907, c. 355, granting to the water power corporation thereby created title to the lands under the water, is separable and does not render the entire act unconstitutional.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 58–66, 195; Dec. Dig. § 64.*]

10. EMINENT DOMAIN (§ 53*) — CONSTITUTIONAL EXERCISE OF POWER — CONSTRUCTION.

Laws 1913, c. 452, which repealed Laws 1907, c. 355, which incorporated a water power company, for the expressed reason that the act of 1907 was unconstitutional, but which repealing act provided that the enumeration of the grounds for repeal should not impair or limit the full force, of the repeal, and Laws 1913, c. 453, which provided that the board of claims should determine claims presented against the state by the company on account of the .repeal of its charter, when construed together, constituted a condemnation of the franchise of the corporation and a provision for the payment of any vested rights acquired by the water power company, if any.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 131–134; Dec. Dig. § 53.*]

11. EMINENT DOMAIN (§ 71*) — COMPENSATION — SUFFICIENCY OF STATUTORY PROVISIONS.

The provision of Laws 1913, c. 453, giving the board of claims jurisdiction to determine claims presented by a water power company on account of the repeal of its franchise is a sufficient provision for compensation for the condemnation of the franchise.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 180–187; Dec. Dig. § 71.*]

12. EMINENT DOMAIN (§ 13*)—PUBLIC USE.

The law of eminent domain can be invoked to take private property only for a public use.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 51–53, Dec. Dig. § 13.*]

13. EMINENT DOMAIN (§ 67*)—DETERMINATION OF PUBLIC USE—LEGISLATIVE DECLARATIONS.

Where a statute condemning the franchise of a corporation states that it is to be taken for a public use, that declaration is sufficient, in the absence of proof to the contrary, to sustain a judgment that the purpose was, in fact, a public one.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 165–167; Dec. Dig. § 67.*]

14. EMINENT DOMAIN (§ 67*)—DETERMINATION OF PUBLIC USE—IMPLIED LEGISLATIVE DECLARATION.

Courts will give great weight to the legislative declaration that a certain use is public, implied from giving the right of eminent domain for such purpose.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 165–167; Dec. Dig. § 67.*]·

15. EMINENT DOMAIN (§ 66*)—PUBLIC USE—CONDEMNATION BY STATE.

The use for which property is to be condemned will be scrutinized less closely when it is to be vested in the state than when it is to be vested in a private corporation.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 165–167; Dec. Dig. § 66.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

16. EMINENT DOMAIN (§ 67*)—STATUTORY EXERCISE OF POWER—PRESUMPTIONS—PUBLIC USE.

Where the Legislature repeals a special act creating a corporation by an act which condemns the franchise of that corporation, it will be presumed that it had in view a public use, unless a contrary purpose be affirmatively expressed or implied.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 165–167; Dec. Dig. § 67.*]

17. EVIDENCE (§§ 33, 48*)—JUDICIAL NOTICE—ACTS OF LEGISLATIVE AND EXECUTIVE DETERMINATION.

In determining the use for which the franchise of a corporation is to be condemned, the court can take judicial notice of the acts of the legislative and executive departments of the state government at the time of passing the act of condemnation.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 47, 70; Dec. Dig. §§ 33, 48.*]

18. EMINENT DOMAIN (§ 13*)—STATUTORY EXERCISE OF POWER—PURPOSE.

The purpose for which the franchises of a water power company were condemned by Laws 1913, cc. 452 and 453, construed in the light of the acts of the Governor to the Legislature in regard thereto, was for the conservation and future development of the water power by the state itself.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 51–53; Dec. Dig. § 13.*]

19. EMINENT DOMAIN (§ 35*) — "PUBLIC USE" — GENERATION OF POWER BY STATE.

The generation of electricity from water power by the state to be furnished to the public upon equal terms is a public use for which private property may be condemned.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 80; Dec. Dig. § 35.*

For other definitions, see Words and Phrases, vol. 6, pp. 5825–5837; vol. 8, p. 7774.]

20. STATUTES (§ 21*)—NUMBER OF VOTES REQUIRED—APPROPRIATIONS.

Laws 1913, c. 452, appropriating money to repay to the corporation, whose franchises were thereby condemned for a public use, the money which had been paid by that corporation into the state treasury, is an appropriation for a public use, and not within the provisions of Const. art. 3, § 20, requiring the assent of two-thirds of the members of the Legislature to a bill appropriating money for a private use.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 18–27; Dec. Dig. § 21.*]

Kellogg and Howard, JJ., dissenting.

Appeal from Special Term, Albany County.

Applications by the People of the State of New York, on relation of G. Wilson Ball, and by the Long Sault Development Company, for a writ of mandamus against John J. Kennedy, as State Treasurer. From orders dismissing the applications, the relator and the applicant appeal. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Strong & Cadwalader, of New York City (Henry W. Taft, of New York City, of counsel), for appellant Long Sault Development Co.

Clarence C. Ferris, of New York City (Henry W. Taft, of New York City, of counsel), for appellant G. Wilson Ball.

Thomas Carmody, Atty. Gen., for respondents.

SMITH, P. J. The orders appealed from denied writs of mandamus to compel the State Treasurer to accept from the Long Sault Development Company $25,000 tendered him pursuant to the provisions of chapter 355 of the Laws of 1907, which was a special act incorporating said company. The first application was by the company, and, immediately upon the refusal of the writ asked for, a similar application was made by a taxpayer, which was also refused. The act of incorporation was entitled:

"An act to incorporate the Long Sault Development Company, and to authorize said company to construct and maintain dams, canals, power houses and locks at and near Long Sault Island, for the purpose of improving the navigation of the St. Lawrence river and developing power from the waters thereof, and to construct and maintain a bridge, and carry on the manufacture of commodities."

The act conferred upon the company general corporate powers and a special right to erect dams and power houses and to use the waters of the St. Lawrence river in the vicinity mentioned for the purpose of generating power. The act provided for the payment of certain fixed sums to the state amounting to $15,000 for the year 1910 and $20,000 for the year 1911. After 1911 the company was required to pay certain rates estimated upon the average amounts of horse power generated during the year, or, if such a rate should amount to less than $25,000, then this sum should be due and payable for such year. The company has expended large sums in surveys, in obtaining land, and in preliminary development work, but has never constructed any dams or generated any power. On or about January 21, 1913, the company tendered to the State Treasurer the sum of $25,000 in payment for the amount due by it to the state for the year 1912. This sum the State Treasurer declined to accept, and the two mandamus proceedings were thereupon instituted. The grounds of the refusal of the State Treasurer were, as stated by him at the time, that he had been advised by the Attorney General that the statute under which the payment was assumed to be made was "unconstitutional and void." After these appeals had been taken, and while they were still pending, two bills were passed by the Legislature, being chapters 452 and 453 of the Laws of 1913, and which became laws with the approval of the Governor May 8, 1913. The first act repeals the act incorporating the Long Sault Development Company and provides the sum of $36,320 for the purpose of repaying to said company all sums paid by it to the state, and the second act confers jurisdiction upon the board of claims to hear and audit any claims presented by the said company against the state by reason of the repeal of its charter. The various provisions of these different acts will be considered at length later.

[1-3] The Attorney General insists that mandamus will not lie inasmuch as the petitioner and relator have suffered no legal damages; that the refusal of the State Treasurer to accept the sum mentioned indicated at the most merely a policy of the state to question the legal status of the appellant company, but could not affect its right if any under its charter, inasmuch as a valid tender had been made. Appellant's charter conveyed water rights only as far as the Canadian boundary line in the St. Lawrence river and also contemplated co-operation on the Canadian side with a Canadian corporation. As no dam could be erected in the river on the American side without the consent of the federal government, the state franchise granted by the original incorporating act was practically worthless without such consent. Section 9 of the act required the company to begin the work of constructing the dam within one year after Congress should authorize such construction, and the company at the time of the instituting of these proceedings was still endeavoring to obtain the consent of Congress to its project but had not succeeded. It is thus evident that the act of the State Treasurer in all probability would operate as a very considerable obstacle to the company's success with the federal government, as Congress would not be apt to consider favorably the claims of the corporation operating under a state charter which the state authorities declined to recognize as constitutional. The act of the state official constituted a cloud upon the title of the company's franchise, and the mandamus proceedings brought by the company were in effect to remove this cloud, although primarily to compel an official to perform a ministerial act. We see no reason why mandamus will not lie to effect such results. The performance of a ministerial duty by a public officer may be enforced by mandamus. People ex rel. Harris v. Commissioners, 149 N. Y. 26, 31, 43 N. E. 418. It has been held that a tax officer may be compelled by mandamus to accept certain sums in payment of the arrears of taxes, although the statute of limitations has run against such payments, as there is no presumption of payment by lapse of time, and the owner therefore has the right to have this lien or cloud on his title removed. People ex rel. Townshend v. Cady, 50 N. Y. Super. Ct. 399, affirmed in 99 N. Y. 620. If the appellant company were not entitled to mandamus, it would seem that the appellant relator was entitled as a taxpayer to compel a state officer both to do his duty and to collect all sums due to the state.

[4] But mandamus cannot be granted to compel an officer to act under a law that is unconstitutional, and the constitutionality of the act incorporating this company is thus directly raised by these proceedings. The Attorney General in December, 1912, pursuant to a request by the Senate, submitted to it an opinion as to the constitutionality of the special act incorporating this company, in which he declared it unconstitutional on four grounds. On January 13, 1913, the Governor sent a message to the Legislature urging the repeal of said act for the same reasons, and these several grounds are repeated in practically the same language in the act repealing the special act. These grounds are as follows:

[5] First: That the act—

"contravenes section 18 of article 3 of the state Constitution, which provides that the Legislature shall not pass a private or local bill granting to any private corporation, association or individual any exclusive privilege, immunity or franchise whatever."

In Matter of Union Ferry Co., 98 N. Y. 139, where an act enabled the company to acquire by condemnation an additional ferry slip in the East River, Judge Rapallo, in writing the opinion of the court upholding the constitutionality of the act, says at pages 153, 154:

"The exclusiveness prohibited is one which is created by the terms of the grant, not that which results from the nature of the property or right granted."

So in the case at bar the only exclusiveness in the act is that created by the nature of the property or right granted. Obviously it would be as difficult to grant to several corporations the right to build a dam at a certain point and to develop water power thereby as to grant to several the right to build a ferry slip at a certain point. Judge Rapallo's reasoning and the long-continued custom of the state in granting bridge and ferry and dam privileges seem clearly opposed to respondent's arguments on this point.

[6] Second:

"It violates section 7 of article 7 of the state Constitution, which provides that the lands of the state now owned or hereafter acquired, constituting the Forest Preserve, as now fixed by law, shall be forever kept as wild forest lands and shall not be leased, sold or exchanged, or taken by any corporation, public or private."

The incorporating act provides that the bed of the St. Lawrence river to be occupied by the works to be constructed by the appellant company shall, after the federal government has authorized such construction, and upon the application by said company, be conveyed to it upon the payment of the sum of $10,000 to the state. The state now claims that the bed of the river thus to be conveyed is included within the Forest Preserve as defined by section 100 of chapter 332 of the Laws of 1893. The land which the state is authorized to convey to the appellant company lies under the waters of the river and between the uplands and the international boundary line. At the location of the proposed works there is no wild forest land whatever. The uplands are cultivated and have been for a number of years. There are no extensive forests in the vicinity and no state lands for a number of miles back from the river. Said section 100 specifies all lands owned by the state within certain counties, with certain exceptions, as being a part of the Forest Preserve; but we do not think that the intent was thereby to include lands lying under the water in the St. Lawrence river which are separated by many miles from the lands above water owned by the state in this county. The constitutional provision refers to the lands of the Forest Preserve as "wild forest lands," and, while this description might include lands under water owned by the state adjoining such "wild forest lands," it would hardly seem to include other lands under water at a distance from any forests whatever.

[7, 8] Third:

"The act in question is a private bill and embraces more than one subject, and is therefore in violation of article 3, § 16, of the state Constitution, which provides that no private or local bill which may be passed by the Legislature shall embrace more than one subject, and that shall be expressed in its title."

The title of the act hereinbefore quoted, although it mentions the construction of a bridge, does not refer to any right to collect tolls for passage thereover, which right, however, is given by section 3 of the act. But we think that the reference to a bridge in the title gives sufficient notice of the contents of the bill so as not to mislead any one examining the title. The right to collect tolls would naturally follow the right to construct a bridge, not a railroad bridge, and is so incidental thereto as not fairly to constitute a different "subject" so that it must be expressed in the title to conform to the Constitution. The same line of reasoning would apply to the right given to become the owner of state lands under water. This right has been frequently given in connection with franchises for dams in this state, although some private dams have been built upon state lands and so seems incidental to the subject of the construction of the dam rather than a distinct subject by itself. But if otherwise there seems to be no reason why the parts of the act referred to may not be stricken out and the remainder of the act be held constitutional. In Matter of New York & Long Island Bridge Co., 148 N. Y. 540, at pages 553, 554, 42 N. E. 1088, at pages 1091, 1092, Judge Bartlett in delivering the opinion of the court says:

"The general principle of construction is well settled that where an act deals with a subject not expressed in its title, and the void provisions are separable from those that are lawful, and that which remains is capable of being executed, and stands complete in itself, it may be treated as constitutional."

The special features of the present act which are objected to as not being properly expressed in the title are not absolutely necessary, as we view it, to the operations of the appellant company, and so may, if necessary, be eliminated and the balance of the act be held constitutional.

[9] Fourth:

"The act is invalid as being in excess of the powers of the Legislature, in that it provides for the alienation by the state to the Long Sault Development Company of title to the lands in the bed of the St. Lawrence river. * * * *"

As to whether the state can convey to a private corporation for private uses its title to the bed of a navigable stream which it holds by a sovereign right would seem to be a matter of considerable doubt. It may be noted, however, that this has been done by the state at least several times in recent years in connection with various power projects by private corporations, so that possibly it is now too late to question the existence of such a right however much the policy may be criticised. Moreover, the title of the incorporating act states as a purpose the "improving of navigation of the St. Lawrence river," and, as this would be the effect of the building of the dam and lock proposed, it might possibly be held that this incidental pub-

lic purpose is sufficient to validate the ceding of state lands under water. Hazen v. Essex Co., 12 Cush. (Mass.) 475, 477, 478. If, however, this feature of the act should be held unconstitutional, we think that the remainder of the act may still be upheld. This reasoning would also uphold the balance of the act if our holding upon the second ground as to the Forest Preserve is questioned. See Matter of Village of Middletown, 82 N. Y. 196, 202; People v. Kenney, 96 N. Y. 294, 302, 303.

[10] Assuming then that the act of incorporation in question was at least in its main features constitutional and that mandamus was a proper remedy of both the appellant company and the relator, the question then arises as to what, if any, change has been created by the repealing act. In discussing this question it will be further assumed that, while the Legislature under its reserved power has the right to dissolve the corporation, it has not the right to confiscate its franchises. This was determined in People v. O'Brien et al., 111 N. Y. 1, 18 N. E. 692, 2 L. R. A. 255, 7 Am. St. Rep. 684. Under its sovereign right to condemn all property within its borders for the public use, it may condemn appellants' franchises theretofore given if it conforms to the constitutional requirement by paying just compensation. This act purports to repeal the original act of incorporation upon the four grounds hereinbefore mentioned, but also states in section 4:

"The enumeration in this act of the grounds for such repeal shall not be deemed to qualify or impair the full force and effect of the repeal."

[11-13] If therefore the act can be sustained upon any grounds whatever, it must be held valid, as every presumption is in favor of the constitutionality of every declaration of legislative intent. We are of opinion that the repealing act, together with the accompanying act passed upon the same date, constitutes in effect an attempted condemnation of the special franchise granted to the appellant company by the special act of incorporation. The Legislature has in effect said that, if the original act of incorporation be unconstitutional, we have given nothing, or take back what was thus illegally granted; if, on the other hand, that act was constitutional and gave to the company thereby formed some vested rights, we nevertheless take back what we then gave you and will pay you your damages to be adjusted by the Court of Claims. The state has in this adopted the same procedure as is adopted in condemnation of all land or property for canal purposes. The compensation is provided for sufficiently to meet constitutional demands. In general the law of eminent domain can be invoked to take private property only for a public use. If this legislation which we thus construe as amounting to condemnation proceedings by special acts had stated therein as its purpose that this franchise was to be taken for a public use, such a statement of purpose would probably have been sufficient upon which to base a judicial determination, in the absence of proof to the contrary, that the purpose was in fact a public one and the right of eminent domain properly invoked. Hazen v. Essex Co., 12 Cush. (Mass.) 475, 477; United States v. Gettysburg Electric Ry., 160 U.

S. 668, 680, 16 Sup. Ct. 427, 40 L. Ed. 576; Walker v. Shasta Power Co., 160 Fed. 856, 859, 87 C. C. A. 660, 19 L. R. A. (N. S.) 725; Jacobs v. Water Supply Co., 220 Pa. 388, 393, 69 Atl. 870, 21 L. R. A. (N. S.) 410; Sexauer v. Star Milling Co., 173 Ind. 342, 347, 90 N. E. 474, 26 L. R. A. (N. S.) 609. See, also, Matter of Niagara Falls & Whirlpool R. Co., 108 N. Y. 375, 386, 15 N. E. 429; Ulmer v. Railroad Co., 98 Me: 579, 591, 57 Atl. 1001, 66 L. R. A. 387.

[14] But it has also been held that when the Legislature, by giving the right of eminent domain in a particular instance, thus impliedly declares that the purpose for which condemnation is to be sought is a public one, the courts will give great weight to such a legislative declaration. Dietrich v. Murdock et al., 42 Mo. 279, 283, 284; Town of Rensselaer v. Leopold, 106 Ind. 29, 32, 5 N. E. 761; Tanner v. Treasury T. M. & R. Co., 35 Colo. 593, 597, 83 Pac. 464, 4 L. R. A. (N. S.) 106; Westport Stone Co. v. Thomas, 175 Ind. 319, 321, 322, 325, 94 N. E. 406, 35 L. R. A. (N. S.) 646. See, also, 22 L. R. A. (N. S.) 173, note. In the case of an act repealing for abuse the charter of a company incorporated by special act, where the preamble of the repealing act was defective and omitted important facts, it was held that every presumption was in favor of the constitutionality of the repealing act; and that accordingly the court would "presume the existence of every fact upon which the validity of the law depends." Erie & North-East R. R. v. Casey, 26 Pa. 287, 303, 317, 318, 323. See, also, a similar Massachusetts case of the revocation of a charter by the Legislature by special act, where the court said:

"We are bound to presume that the contingency, upon which the right to exercise it depended, has happened." Crease v. Babcock, 23 Pick. 334, 344 (34 Am. Dec. 61).

[15] A further principle seems well established, and this is that:

"The use will be scrutinized less closely when the property is vested in the state or some public agency, than when it is vested in a private corporation." Lewis on Eminent Domain (3d Ed.) p. 499.

See, also, United States v. Gettysburg Electric Railway, cited supra, 160 U. S. at page 680, 16 Sup. Ct. 427, 40 L. Ed. 576. The note on page 173 of 22 L. R. A. (N. S.) reads as follows:

"If the state itself requires for its own use private property, and essays, through public officers, to take it for itself, the courts decline to consider any question but that of compensation to the owner."

It has also been held that:

"The question whether the exercise of the right of eminent domain is to be denied or withheld is not to be tested solely by the description of the objects and purposes set forth in the articles of incorporation. It may be governed by evidence aliunde showing the actual purpose in view." Walker v. Shasta Power Co., cited supra, 160 Fed. at page 860, 87 C. C. A. at page 664, 19 L. R. A. (N. S.) 725, citing Matter of Niagara Falls & Whirlpool Railroad Co., cited supra.

[16-18] Within the foregoing principles and authorities we think that the Legislature, in enacting the repealing act here construed as an attempted condemnation by the state of a special franchise already

granted by special act, must be presumed to have had in view a public purpose, and that such presumption must prevail so as to validate the act of repeal unless a contrary purpose be affirmatively expressed or shown.   We lack any affirmative proof in the record as to just what particular public use or uses the Legislature had in mind upon this occasion, but obviously there are a number of possible public uses that would justify the state in seeking to regain its rights in the waters of the St. Lawrence at the point in question.   The purpose of a public park or the improvement of navigation would undoubtedly give to the state the right of eminent domain.   But, although there is no public use stated in the condemnation acts, we may fairly take judicial notice of the various acts of both the legislative and executive branches of the state government at the time of the passing of these acts, in order to ascertain if possible the real purpose lying back of their passage.   In 1911 the conservation law was passed as chapter 647 of the laws of that year.   The conservation commission thereby created was directed in section 21 of the act to investigate the water resources of the state "for the conservation, development, regulation and use of the waters in each of the principal watersheds of the state with reference to the accomplishment of the following public uses and purposes:   *   *   *   (4) The development, conservation and utilization of water power in the watershed and to create a revenue for the state."   In his message of January 13, 1913, already referred to, the Governor in urging upon the Legislature the repeal of the charter of the appellant company states that not only is the special act unconstitutional for the four reasons already discussed by us, but that its provisions "are in other respects improvident, unwise and indefensible," and quotes at length from the report of the State Conservation Commission as follows:

"The vast power available at this place constitutes one of the state's greatest natural resources.   The advances in the art of electrical transmission make it economically feasible to use the same throughout the state.   At present it is going to waste.   It is for the interest of all that this power should be developed and utilized by the people and for the people.   Cheap power will enlarge the use of electricity for domestic and commercial purposes; stimulate industry; increase our wealth and add to our population.   Private interests should not be allowed to exploit and monopolize the same.   The state should develop this power for the benefit of the ultimate consumer."

The message then states that the full economic development of the Long Sault Rapids will produce 1,000,000 horse power, refers to the great value to the state and the people of such power, and concludes:

"In order that we secure for all our citizens the many and the lasting beneficial results of the proper development of our natural resources, particularly of our now unused water powers, in accordance with our constructive policy in these matters, to which our state now stands committed, I respectfully recommend that chapter 355 of the Laws of 1907—the Long Sault Development Company's charter—be immediately repealed."

In his memorandum of approval of the repealing act the Governor further states that the repeal "will secure to all our citizens the beneficial results of the proper development of our natural resources, particularly of our now unused water powers, in accordance with

the constructive policy of real conservation to which the state of New York now stands committed." There accordingly seems to be no doubt that the object of the Governor in securing the repeal of the Long Sault Company's charter was to reclaim for the people a valuable water power site with the idea that such site would ultimately be made use of by the people, as distinguished from a private corporation, for the generation and distribution of electric power. That the Legislature shared in this purpose seems evident by their passage of the repealing act, even although the repeal is specifically based solely upon the ground of the unconstitutionality of the original act of incorporation, but with the saving clause of section 4 mentioned. The question of the water power of the state being developed for the direct benefit of the people of the state was being favorably considered by the Legislature at the time of the passage of the Long Sault repealing act, as is shown by the fact that at least two bills amending the conservation law were prominently before the Legislature. Both bills provided for the state utilization of water powers and contained condemnation provisions. Of these the Murtaugh-Patrie bill passed both houses, but was vetoed by the Governor on various grounds, including among others the ground that the state should begin its policy of water development at the Long Sault Rapids.

[19] The purpose of the Legislature in enacting the repealing act being thus fairly shown to be for future power generation by the state from public waters, we are not prepared to hold that such a proposed use is not a public one. This question does not appear ever to have been decided in this state, but in some jurisdictions it has been held that the generation of electric power by water for sale to the public on equal terms is a public use (Walker v. Shasta Power Co., supra, 160 Fed. at page 859, 87 C. C. A. 660, 19 L. R. A. [N. S.] 725), and some authorities seem to hold that the development of water power even for private consumption is such a public purpose as to justify the exercise of the right of eminent domain (Hazen v. Essex Co., supra, 12 Cush. [Mass.] at pages 477, 478, 22 L. R. A. [N. S.] 137–151, note). Without going to the extent of this latter case, which may be questioned on principle, we see no reason why the furnishing by the state of electric power generated by the state waters to the public upon equal terms would not be properly a public use, especially as the cases seem to hold that this same business if engaged in by a private corporation would be a public one. Available water power sites in any state must always be limited in number and will probably increase in value with the progressive exhaustion of nearby coal deposits. The navigable waters of the state are primarily owned by the public, and if the state in furtherance of a policy of conservation decides to retain or regain all its rights therein and ultimately to use such waters for power generation, such a policy seems to us clearly public in its nature, so that the right of eminent domain may be invoked.

[20] A single question remains, whether the repealing act was in fact invalid as not having the requisite number of votes. The act is stated to have been passed "three-fifths being present." The appellant company now claims that the act is void as in violation of section

20 of article 3 of the Constitution, which requires the assent of two-thirds of the members elected "to every bill appropriating public moneys or property for local or private purposes." It is admitted that the original act incorporating the appellant company was a private bill, and it is now claimed that the repealing act which provides for the payment of certain public moneys is likewise a bill appropriating public moneys for a private purpose. To this we cannot assent. If the general purpose of the repealing act is, as it appears to us, presumptively a public one by enabling the state to regain possession of a valuable water power, any moneys necessarily to be expended to secure such result must be regarded as appropriated for a public use. As we have heretofore held, the state had the right to exercise its right of condemnation as regards the special franchises of this company. But this right could be exercised only upon making due compensation, which would of necessity include a return of moneys already received by the state from the company. The repayment of such moneys is therefore a simple act of justice to compensate for the property taken. It is a part of the condemnation proceedings by the state as provided for by the two acts of May 8, 1913, and as such "is but a part of its legitimate functions and duties as a sovereign and the purpose in such case would seem to be public." Waterloo Woolen Manufacturing Co. v. Shanahan, 128 N. Y. 345, 360, 28 N. E. 358, 362 (14 L. R. A. 481).

The two orders appealed from should be affirmed, without costs, however, as they are here sustained by matters arising after the appeals were taken and in fact argued.

Orders affirmed, without costs. All concur, except KELLOGG, J., dissenting in memorandum in which HOWARD, J., concurs.

JOHN M. KELLOGG, J. (dissenting). I agree with the Presiding Justice that the original act creating the Long Sault Development Company was in most respects constitutional, and that the State Treasurer should have accepted the tender. I dissent from the determination that the repeal was in any way a condemnation of the property under the power of eminent domain.

Many times we are left in doubt as to the legislative intent. In this case, the Legislature has declared its intent and bases the repeal solely upon the ground that the original act was unconstitutional. There is no suggestion that it intended to appropriate the property of the company for public use. It sought to repeal the grant of rights which it had made to the company and, as a matter of fairness, felt bound to reimburse it for the expenditures it had made under the act.

The provision that the enumeration of the grounds for the repeal shall not qualify or impair the force of the repeal means simply that the repeal is absolute, whether the grounds stated are good or bad. It does not mean that we can ignore the declared intent of the Legislature and find a legislative intention directly opposite to that expressed in the act.

The Legislature declared in plain words the reasons which impelled it to make the repeal, but declared that the repeal should be effective

in any event. An attempt by the state to recede from its contract cannot be construed into appropriating property under its power of eminent domain.

The company had some right under the grant. The act creating the company granted to it certain rights, so far as the state had the power to make such grant, and the company was to make annual compensation for such grant. The fact that the grant is not as broad and as effective as its terms imply is no reason why the state can recede from it. It might furnish ground for the company to seek to be relieved from paying the purchase price that the state cannot legally transfer what is undertook to grant. The fact that the company is getting less than the contract contemplated it should get is no reason why the state can refuse to receive the consideration.

We may assume that the Legislature had the power to repeal the charter of the corporation, but it cannot, by repeal, take away the vested rights. We need not consider whether the company has sufficient life to continue this proceeding, as the complaint of the taxpayer may well be heard and the court may well act upon it. The mandamus should therefore issue, leaving it to be determined in a proper way and proper manner what right the company, or a trustee appointed to receive its assets, may have.