# JDR Acquisition, LLC v. Mitts Milavec, LLC

314

*Gary M. Samms*, for plaintiff.

*Geoffrey Paul Huling, Maurice R. Mitts, Dexter R. Hamilton and Arthur P. Fritzinger*, for defendants.

DJERASSI, *J.*, Nov. 17, 2014—Defendant law firm contracted with plaintiff court reporter to record and transcribe eleven depositions for a federal civil case. The law firm then refused to pay and argues that the bill should be paid directly by their client. Following a bench trial, this court found otherwise. There is a valid contract between the law firm and the court reporter, and the client was not a party to their agreement. The law firm's argument that agency law shields them from paying the money is inapplicable. The law firm clearly contracted for the services that were performed. Additionally, public policy makes attorneys responsible for court reporting bills unless there is an express waiver by the attorney. There was no waiver in this case.

Mitts Law, LLC, then operating as Mitts Milavec, LLC, represented Devon IT in a federal case in the U.S. District Court for the Eastern District of Pennsylvania, *Devon IT, Inc., et al. v. IBM Corp., et al* (No. 2:10-cv-2899-JHS). Maurice Mitts, Esq. was the managing partner at Mitts Milavec and is now managing partner at its legal successor, Mitts Law. We will refer to defendant law firm as "Mitts Milavec" going forward.

On March 4, 2011, Mitts Milavec agreed to a written retainer with Devon IT covering the *IBM Corp.* federal litigation in which Mitts Milavec promised to pay for litigation expenses going forward. (N.T. 3/21/14, p. 55-56). Mr. Mitts understood "litigation expenses" to include court reporting expenses. (N.T. 3/21/14, p. 56). No other fee agreement superseded the March 2011 agreement. (N.T. 3/21/14, p. 58).

In November 2011, Ms. Charissa Ray, staff member and business developer for JDR Acquisition, LLC ("JDR Acquisition") d/b/a James DeCrescenzo Reporting, LLC, met with Mr. Mitts over lunch. They discussed potential court reporting services for Mitts Milavec in connection with the Devon IT case. The lunch was followed up by another meeting involving Mr. Mitts, Ms. Ray and JDR Acquisition's principal, James DeCrescenzo ("DeCrescenzo"), along with an unnamed Mitts Milavec associate. At this second meeting, an agreement was reached between Mitts Milavec and JDR Acquisition. The deal included specific discounts offered by JDR Acquisitions to win the business. These included lowered prices for each transcript page, expedited delivery, free deposition DVD copies and free hand delivery of transcripts. (N.T. 3/21/14, p. 18). Ultimately, JDR Acquisition provided court reporting services on the Devon IT case to Mitts Milavec

at in-state and out-of-state locations including New York, Connecticut and Washington, D.C. JDR Acquisitions also modified its customary online repository procedures to accommodate the specific needs of the Mitts Milavec firm for the *IBM Corp.* litigation. (N.T. 3/21/14, p. 12).

The agreement was orally approved by Mr. Mitts on behalf of his law firm, Mitts Milavec. Neither Mr. Mitts nor anyone else from Mitts Milavec told JDR Acquisition personnel that they intended someone else to pay JDR's bills. No principals, agents or employees of JDR Acquisition ever communicated to corporate representatives of Devon IT about arrangements for court reporting services made with Mitts Milavec in connection with *IBM Corp.* (N.T. 3/21/14, p. 14). In January 2012, JDR Acquisition delivered court reporting services for eleven depositions in *IBM Corp.* Each deposition notice was sent by Mitts Milavec. When JDR Acquisition finished its work on *IBM Corp.*, Mr. Mitts sent an email to Ms. Ray, writing, "Thank you for all your support and great efforts, we deeply appreciate you and your company." (N.T. 3/21/14, pp. 16-17) (emphasis added).

JDR Acquisitions sent invoices to Mitts Milavec for this work but was never paid. JDR Acquisition inquired but never received a response until the filing of this lawsuit. (N.T. 3/21/14, pp. 15, 16-17).

At the time of this action, JDR Acquisition was owed $31,428.60 for unpaid court reporting services.

## II. PROCEDURAL HISTORY

On April 29, 2013, plaintiff filed a second amended complaint alleging breach of oral contract, quantum meruit, and unjust enrichment against defendants Mitts Milavec, Mitts Law, LLC, and Maurice R. Mitts, Esq., individually.

On March 21, 2014, we heard a bench trial, and on March 25, 2014, filed findings of fact and conclusions of law. The law firm breached an oral contract with its court reporter, and we awarded damages including interest in the amount of $35,363.50. No liability was found against Maurice R. Mitts, Esq. in his individual capacity.

On April 4, 2014, defendants filed timely post-trial motions which were denied on May 22, 2014. Defendants appealed on June 18, 2014, and their timely 1925(b) Statement was filed on July 25, 2014.

### III. LEGAL ISSUES ON APPEAL

At the outset, defendants have waived two appellate issues for lack of specificity in their 1925(b) Statement. Defendants claimed the following:

1. "The trial court erred in entering a verdict in favor of plaintiff JDR Acquisition d/b/a James DeCrescenzo Reporting, LLC ("DeCrescenzo") and against Mitts Law. *See* order of March 25, 2014."

2. "The trial court erred in denying the motion by defendant Mitts Law, LLC f/k/a Mitts Milavec, LLC for post-trial relief pursuant to Rule 227.1. *See* order of May 21, 2014."

*See* defendant's 1925(b) Statement.

Neither claim specifies grounds, and each is waived for failure to comply with Pa. R.A.P. 1925(b). All Rule 1925(b) statements "must be specific enough for the trial court to identify and address the issue an appellant wishes to raise on appeal." *In re A.B.*, 63 A.3d 345, 350 (Pa. Super. 2013) (internal citations omitted). "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Com. v. Dowling*, 778 A.2d 683, 686 (Pa. Super. 2001).

Issues 1 and 2 are therefore waived. *See Majorsky v. Douglas*, 58 A.3d 1250, 1258 (Pa. Super. 2012), *reargument denied* (Feb. 1, 2013), *appeal denied*, 70 A.3d 811 (Pa. 2013), *cert. denied*, 134 S. Ct. 910 (2014).

Three issues remain: 1) whether there was a factual basis to conclude that Mitts Milavec entered into a binding contract with JDR Acquisition; 2) whether agency law or contract law governs; and 3) whether liability was a question of law rather than fact.

A. An Oral Contract Existed Between Mitts Milavec And JDR Acquisition for Court Reporting Services In The *Devon IT v. IBM Corp.* Case.

Mitts Milavec argues there was no factual basis to support a finding that it had entered into a binding contract with JDR Acquisition. The law firm's claim is based on proof that JDR Acquisition knew Devon IT had retained Mitts Milavec for the *IBM Corp.* case before signing on as court reporters. Mitts Milavec argues it is not liable to JDR Acquisition because they had implicitly agreed that the law firm's client would pay them directly. However, neither law nor evidence supports this.

1. A contract exists between JDR Acquisition and Mitts Milavec.

Clear evidence establishes that Mitts Milavec and JDR Acquisition had entered into a contractual agreement. In particular, the written retainer agreement between the law firm and client Devon IT was persuasive.

To establish that an oral contract exists and is enforceable, the following must be proven: 1) both parties manifested an intention to be bound by the terms of the agreement; 2) the terms of the agreement were sufficiently definite to be specifically enforced; and 3) there was mutuality of consideration. *Pennsy Supply, Inc. v. Am.*

*Ash Recycling Corp. of Pennsylvania*, 895 A.2d 595, 600 (Pa. Super. Ct. 2006); *see also Redick v. Kraft, Inc.*, 745 F.Supp. 296, 300 (E.D.Pa.1990) (applying Pennsylvania law); *McCormack v. Jermyn*, 40 A.2d 477, 479 (Pa. 1945) (outlining elements for enforcing an oral contract). A decision by the parties to keep a contract in oral form does not make the contract unenforceable. *Shovel Transfer & Storage, Inc. v. Pennsylvania Liquor ControlBd.*, 739 A.2d 133, 138 (Pa. 1999); *see also* Restatement of Contracts (Second) § 27.

First, both Mitts Milavec and JDR Acquisition mutually agreed that JDR would perform court reporting services at Mitts Milavec's direction in connection with the *IBM Corp.* case. Indeed, the law firm requested — and the court reporters agreed to — specific financial and operational concessions to win the business. These included speedy delivery and DVD services for the convenience of the law firm and lower than customary prices for each transcript page. (N.T. 3/21/14, p. 18).

Second, the oral terms of their agreement were sufficiently specific to be enforceable — JDR Acquisition would perform court reporting services for Mitts Milavec on the *IBM Corp.* case, and Mitts Milavec was responsible for the bill.

Testimony by representatives of JDR Acquisition show an implied understanding, a promise that Mitts Milavec would pay their court reporters directly. On behalf of JDR Acquisition, Ms. Ray testified that her understanding of their agreement for services was that Mitts Milavec would be paying directly. (N.T. 3/21/14, p. 13). She testified that JDR Acquisition's standard operating procedure was to send its invoices to the law firms that hired them. She said, "My understanding in this case is the same as in every other client that I have ever dealt with or brought in, and

that's that the firm hires us to do court reporting services and *the firm pays us*." (N.T. 3/21/14, p. 13-14) (emphasis added). She also testified that no one at Mitts Milavec ever suggested that anyone other than the law firm would be paying JDR Acquisition's invoices. (N.T. 3/21/14, p. 15).

Similarly, James DeCrescenzo, JDR Acquisition's principal, testified it was his understanding, too, that Mitts Milavec would be paying directly. (N.T. 3/21/14, p. 31-32). He testified that the understanding "...was implied, just like it is implied with every relationship with a lawyer, that they manage the litigation, they direct who to hire and who to fire, and the service provider is ultimately going to get paid." (N.T. 3/21/14, p. 37).

Mr. DeCrescenzo testified:

"I would never enter into an arrangement with anybody other than the lawyer and his firm...I have been a court reporter for over 40 years, sir, I have never entered into an agreement with the lawyer's client. They are not my clients, I don't know who they are; I have no relationship with them. I have never spoken with anybody from Devon or Devon IT, I don't know if they are creditworthy or not. I deal with lawyers, and I have always dealt only with lawyers."

(N.T. 3/21/14, p. 34-35).

DeCrescenzo's testimony was convincing. JDR Acquisition officiated, reported and transcribed eleven depositions in various states after relying on an oral contract with an implied term, standard in the industry, that the law firm would pay court reporting costs and then obtain reimbursement from their clients.

The actions of Mitts Milavec also show the firm understood that the terms of the oral agreement meant it would pay JDR Acquisition directly. Mitts Milavec,

not Devon IT, sent out notices for the depositions, and Mitts Milavec's office address was the billing address for all JDR Acquisition invoices. (N.T. 3/21/14, p. 22-24). Mitts Milavec had sole authority on decisions about what happened to the transcripts or who had access to them. An example was Mitts Milavec's authorization that JDR Acquisition grant Devon IT access to its online repository of depositions. (N.T. 3/21/14, p. 25-26). JDR Acquisition conducted depositions for other firms in the *IBM Corp.* case, sent invoices to those law firms, and received payment directly from the attorneys. (N.T. 3/21/14, p. 43).

Persuasive also was evidence that Mitts Milavec never advised JDR Acquisition that the court reporting invoices were sent to the law firm in error, nor did the firm advise either JDR Acquisition or Devon IT that they were not paying — until JDR Acquisition filed this lawsuit. (N.T. 3/21/14, p. 15, 34-35, 40).

Mitts Milavec's claim is further contradicted by its own written legal retainer fee agreement with Devon IT. The document assigns financial responsibility for litigation expenses to the law firm, specifically stating that "from the date of this agreement [March 4, 2011] going forward, all litigation expenses that will be incurred by [Mitts Milavec] to represent the Devon Entities in these Cases will be paid by [Mitts Milavec]." *See* Plaintiff's Exhibit 16.

At trial, Maurice Mitts, Esq. admitted that court reporting services were considered "litigation expenses" under the fee agreement which had not been superseded. (N.T. 3/21/14, p. 56, 58).

Finally, there was consideration between the parties. JDR agreed to perform court reporting services for monetary compensation from Mitts Milavec.

JDR Acquisition and Mitts Milavec formed an oral contract under which JDR Acquisition would perform court reporting services for monetary compensation from Mitts Milavec. No relief is due on this claim.

2. Mitts Milavec breached its contract for court reporting services with JDR Acquisition.

A contract is breached when a valid contract exists, a duty imposed by said contract is unmet and damages are the consequence. *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999).

In reliance on its contract with Mitts Milavec, JDR Acquisition performed court reporting services valued at $35,363.51 including interest.

B. Mitts Milavec Is Liable Under Agency Law.

Mitts Milavec argues that agency law should control this case and that if applied, agency law makes Devon IT entirely liable for JDR Acquisition's bill. Though this seems to be a question of first impression in Pennsylvania, a majority trend nationally favors attorney liability where a client/law firm retainer holds the law firm responsible for litigation services.

Agency law follows two lines of thought on this issue, both agreeing that law firms are liable for the cost of court reporting services when the firm contracts for them with the court reporters themselves and have promised their clients that they would cover litigation expenses.

The first line holds an attorney liable for court reporting services only if the attorney has expressly agreed to be bound in its retainer. *See Cahn v. Fisher*, 805 P.2d 1040, 1042 (Ariz. Ct. App. 1990) (attorney not liable to court reporter absent express agreement); *see also Petrando v. Barry*, 124 N.E.2d 85 (Ill. App. Ct. 1955) (same).

Under this agency theory, Mitts Milavec expressly agreed to pay for litigation services, including court reporting, through its own retainer with Devon IT. Mr. Mitts testified that the fee agreement was not only valid but was indeed the only applicable retainer for the federal litigation. (N.T. 3/21/14, p. 56, 58). Mitts Milavec is therefore liable to JDR Acquisition. There are no contradictory written agreements, and the law firm expressly agreed to pay litigation expenses in its signed March 4, 2011, retainer fee agreement with Devon IT.

The second theory of agency law — and the one most commonly applied nationally — holds that attorneys are liable for court reporting services absent an express disclaimer because attorneys generally exercise control over the litigation and are therefore more akin to independent contractors than agents. *McCullough v. Johnson*, 816 S.W.2d 886, 888 (Ark. 1991) (holding that an attorney is responsible to a service provider in the absence of a disclaimer because it reflects modern litigation practices and allows court reporters to confidently regard themselves as dealing with the attorney, not the client); *see also Ingram v. Lupo*, 726 S.W.2d 791, 796 (Mo. App. 1987) (explaining that routine practice around the country is for law firms to pay court reporters and this is done for policy reasons to benefit smooth court operations). Efficient court administration puts accountability on attorneys unless they have negotiated an express disclaimer in favor of their clients promise to pay.[1]

---

1. *See Thomas & Thomas Court Reporters, L.L.C. v. Switzer*, 810 N.W.2d 677, 684 (Neb. 2012); *see also People v. Eamick*, 168 P.3d 519, 520 (Colo. 2007); *Matter of Peters*, 332 N.W.2d 10, 17 (Minn. 1983) (same); *Molezzo Reporters v. Patt*, 579 P.2d 1243, 1244 (Nev. 1978); *Burt v. Gahan*, 220 N.E.2d 817 (Mass. 1966) (same); *Free v. Lankford & Associates, Inc.*, 643 S.E.2d 771 (Ga. Ct. App. 2007) (attorney who asked court reporter to transcribe deposition of opposing party in litigation is responsible for court reporter payment); *Boesch v. Marilyn M. Jones & Associates*, 712 N.E.2d 1061, 1063 (Ind. Ct. App. 1999); *Arden*

This view is adopted in the Restatement (Third) of Law Governing Lawyers (2000). On the subject of a lawyer's liability to third persons, the Comment to §30(2) states:

> Even when the client is a disclosed principal, a lawyer is liable for the compensation of a court reporter, printer, expert, appraiser, surveyor, or other person the lawyer has hired who provides goods or services used by lawyers, and who when doing so reasonably relies on the lawyer's credit as stated in Subsection (2)(b). Liability attaches unless the lawyer disclaims liability or the circumstances show that the third person did not rely on the lawyer's credit, for example if the lawyer was inside legal counsel of the client. Merely disclosing the client's name does not convey that the client rather than the lawyer is to pay. Such persons are likely to rely on the credit of the lawyer because they regularly deal with lawyers, while investigating the reliability of the client might be costly.

At trial, Mitts Milavec cited *Rayvid v. Burgh*, 37 Misc.2d 963 (Dist. Ct. Nassau Co. 1962), for the proposition that attorneys are agents of their clients when it comes to retaining the services of a court reporter. In preparing conclusions of law, this court learned that defendant's cited case is not controlling law in New York. Rayvid once stood for the proposition that absent an agreement providing otherwise, New York attorneys could not be held liable for the services of a court reporter under an old rule stated in *Bonynge v. Field*, 81 N.Y. 159 (1880). However, in 2005, a statute was passed abrogating *Rayyid* and *Bonynge*, assuring that attorneys are responsible for court reporter

---

*Properties v. Anderson*, 473 N.W.2d 924 (Minn. App. 1991) (attorney is liable to court reporter independent of recourse to client reimbursement after indicating to court that satisfactory financial arrangements had been made for transcript and attorney ordered service); *Blake v. Ingraham*, 540 N.E.2d 759, 760 (Ohio App. 1989).

fees absent an express disclaimer. *See McKinney's General Business Law* sec. 399-c effective Nov.15, 2005). In doing so, New York has implemented policy first articulated by New York courts in *Urban Court Reporting v. Davis*, 158 A.D. 401 (Sup. Ct. App. 1st 1991) ("It is both illogical and unnecessary to compel the reporter to proceed against a client he or she has not dealt with, probably never saw... this burden may more conveniently and appropriately be placed upon the attorney..."). More recently, the statute has been applied to assure court reporters the right to sue both attorneys and their clients under certain circumstances. *See Elisa Drier Reporting Corp v. Global Naps Networks, Inc.*, 84 A.D.3d 122 (Sup. App. 2nd 2011).

We conclude that JDR Acquisition has stated enforceable causes of action and is entitled to damages under both contract and agency law.

C. The Court Correctly Characterized Questions Of Fact And Law.

Finally, Mitts Milavec argues we erred by finding they had given an implied promise to pay JDR Acquisition directly. They claim we confused law and fact and say they owe nothing. However, the existence of an implied promise is a factual finding which is itself an element of quantum meruit under contract law. JDR Acquisition relied on Mitts Milavec and is still waiting to get paid.

## IV. CONCLUSION

Judgment should respectfully be affirmed in the amount of $35,363.50.